IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and JAMES S. JORGENSEN, Administrator of the Funds, <br><br> Plaintiffs, <br><br> v. <br><br> GARCES CONTRACTORS, LLC, an Illinois limited liability company, and ELDA MANNION, individually <br> Defendant. | Case No. 16-cv-9570 |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and James S. Jorgensen, Administrator of the Funds (hereinafter collectively "Funds"), by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Amy N. Carollo, G. Ryan Liska, Katherine C. Mosenson and Kelly C. Carson, for their Complaint against Defendants Garces Contractors, LLC, an Illinois limited liability company and Elda Mannion, individually:

### COUNT I

**(Failure To Submit Reports and/or Pay Employee Benefit Contributions)**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff James S. Jorgensen is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Garces Contractors, LLC (hereinafter "Company") is an Illinois limited liability company. Company did and does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. Defendant Elda Mannion ("Mannion") is and was at all times a member and officer of the Company.

7. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2013. ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

8. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia,* identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each

covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

10. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has performed covered work during the months of July, 2016 forward and has:

(a) failed to submit reports and/or pay contributions to Plaintiff Laborers' Pension Fund for the period of July, 2016 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit reports and contribution to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of July, 2016 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to submit reports and/or pay contributions to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of July, 2016 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to submit reports and/or pay contributions to Laborers' Training Fund for the period of July, 2016 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(e) failed to report and/or pay all contributions owed to one or more of the other affiliated funds identified above for the period of August, 2016 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

12. On July 23, 2015, the Company entered into an Installment Note ("Note") to pay contributions due and owing on an audit for the period of July 1, 2012 through September 20, 2014 and remittance reports for the period October 2014 through April 2015.

13. Contemporaneously with the signing of the Note, Mannion entered into a Guaranty of Payment and Indemnification ("Guaranty") personally guaranteeing: 1) the amounts due on the Note; 2) benefit contributions and dues that are due at the time the Note was entered into; and 3) benefit contributions and dues that become due while obligations under the Note remain unsatisfied. In addition, Mannion guaranteed payment of interest, liquidated damages, accumulative liquidated damages, audit costs, and attorneys' fees and costs resulting from the Company's failure to timely remit contribution and dues reports and payments. The Company and/or Mannion remitted the final note payment on September 8, 2016. True and accurate copies of the Note and Guaranty are attached hereto as Exhibits B and C.

14. During the duration of the Note, the Company failed to timely pay its May 2015, June 2015, October 2015, March 2016, May 2015 and June 2016 benefit contributions reports. Under the terms of the Agreement and the Funds' Respective Agreements and Declarations of

5

Trust, Note and Guaranty, the Company and Mannion owe $16,265.82 in liquidated damages on the aforementioned contribution reports.

15. The Company's actions in failing to submit timely reports and contributions violate section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

16. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Note and Guaranty, the Company and Mannion are liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions and paid late contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Funds respectfully request that this Court enter judgment against Defendant Garces Contractors, LLC and Elda Mannion, individually:

a. ordering Defendant Garces Contractors, LLC to submit benefit reports and/or contributions for the time period of July, 2016 forward;

b. ordering the Defendant Garces Contractors, LLC to submit its books and records to an audit for the time period of October 1, 2014 forward to determine benefit contribution compliance;

c. entering judgment in sum certain against Defendant Garces Contractors, LLC on the amounts due and owing as pleaded in the Complaint, and pursuant to the amounts revealed as owing pursuant to the July, 2016 forward reports, if any, including contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs;

d. entering judgment in favor of Plaintiff Funds and against Defendant Garces Contractors, LLC and Mannion, jointly and severally in the amount of $16,265.82 for

accumulative liquidated damages relating to the late payment of Company's May 2015, June 2015, October 2015, March 2016, May 2016 and June 2016 benefit contributions reports and for amounts found to be due and owing for the July 2016 through September 8, 2016 reports including contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs;

  e.  awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Reports and/or Pay Union Dues)

  17.  The Funds reallege paragraphs 1 through 16 of Count I as though fully set forth herein.

  18.  Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

  19.  Dues reports and contributions are due by the 10th day following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

  20.  Notwithstanding the obligations imposed by the Agreement, the Company has performed covered work during the months of August, 2016 forward and has failed to withhold and/or report to and forward union dues that were deducted or should have been deducted from the wages of its employees for the period of August, 2016 forward, thereby depriving the Union of income and information.

21. The Company's failure to submit timely payments of its July 2016 dues report under the terms of the Agreement resulted in $47.95 in accumulative liquidated damages.

22. Pursuant to the Agreement, Note and Guaranty, the Company and Mannion are liable to the Funds for the unpaid union dues, as well as liquidated damages, accumulative liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Funds respectfully request that this Court:

a. enter judgment ordering Defendant Garces Contractors, LLC to submit dues reports and payments for the time period of August, 2016 forward;

b. enter judgment ordering Defendant Garces Contractors, LLC to submit its books and records to an audit for the time period of October 1, 2014 forward to determine union dues compliance;

c. enter judgment in sum certain in favor of the Plaintiff Funds and against Defendant Garces Contractors, LLC on the amounts due and owing pursuant to the dues reports and contributions revealed as owing pursuant to the August, 2016 forward dues reports to be submitted, including dues, liquidated damages, accumulative liquidated damage in late reports, audit costs, and Plaintiffs' reasonable attorneys' fees and costs;

d. enter judgment in sum certain in favor of the Plaintiff Funds and against Defendant Garces Contractors, LLC and Elda Mannion, individually, jointly and severally, on the amounts due and owing pursuant to the dues reports and contributions revealed as owing pursuant to the August, 2016 dues reports to be submitted, including dues, liquidated damages, accumulative liquidated damage in late reports, audit costs, and Plaintiffs' reasonable attorneys' fees and costs;

      c.      awarding Plaintiff Funds any further legal and equitable relief as the Court deems appropriate.

October 7, 2016

                                                  Respectfully submitted,

                                                  By: /s/ G. Ryan Liska

G. Ryan Liska  
Laborers' Pension and Welfare Funds  
Office of Fund Counsel  
111 W. Jackson Blvd., Suite 1415  
Chicago, IL  60604  
(312) 692-1540

# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **GARCES CONTRACTORS L.L.C.** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that...

[Body of agreement: sections 1-11 covering Labor Contract, Total Economic Increase, Checkoff Deductions and Remittances, Work Jurisdiction, Subcontracting, Fringe Benefits, Contract Enforcement, Successors, Termination, Execution]

Dated: August 5, 2011

ACCEPTED:
Laborers' Local Union No. 4

By: /s/ Paul P. Connolly

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: /s/ James P. Connolly, Business Manager

By: /s/ Charles LoVerde, Secretary-Treasurer

For Office Use Only: CAJCAR

Employer: Garces Contractors LLC

FEIN No.: _____

By: Elias Mannancuna
(Print Name and Title)

(Signature)

3422 W. Division St
(Address)

Chicago IL 60651
(City, State and Zip Code)

773-266-____
(Telephone/Telefax)

Effective June 1, 2010   WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

EXHIBIT A

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and <u>Garces Contractors LLC</u> (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local <u>4</u> of the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues:

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the audit period of <u>July 1, 2012 through September 30, 2014 and remittance reports for the period of October 2014 through April 2015.</u>

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of <u>July 1, 2012 through September 30, 2014 and remittance reports for the period of October 2014 through April 2015.</u>

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $<u>29,778.46</u> to the Health and Welfare Fund (comprised of $<u>21,600.00</u> in delinquent contributions, $<u>4,551.75</u> in liquidated damages, $<u>789.92</u> in audits costs and $<u>2,836.79</u> in interest) (based on an interest rate of 12%). The Company will pay $<u>10,002.10</u> to the Retiree Health and Welfare Fund (comprised of $<u>7,381.50</u> in delinquent contributions, $<u>1,437.92</u> in liquidated damages, $<u>394.96</u> in audit costs and $<u>787.72</u> in interest). The Company will also pay $<u>29,034.90</u> to the Pension Fund (comprised of $<u>21,221.80</u> in delinquent contributions, $<u>4,379.91</u> in liquidated damages, $<u>789.93</u> in audit costs and $<u>2,643.26</u> in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2. The Company will also pay $<u>1,238.31</u> to the Training Fund (comprised of $<u>1,057.50</u> in delinquent contributions, $<u>105.75</u> in liquidated damages and $<u>75.06</u> in interest), $<u>209.58</u> to the LECET Fund (comprised of $<u>177.88</u> in delinquent contributions, $<u>17.79</u> in liquidated damages and $<u>13.91</u> in interest), $<u>359.25</u> to the LDCMC Fund (comprised of $<u>304.92</u> in delinquent contributions, $<u>30.49</u> in liquidated damages and $<u>23.84</u> in interest), $<u>232.70</u> to the CAICA Fund (comprised of $<u>203.28</u> in delinquent contributions, $<u>13.52</u> in liquidated damages and $<u>15.90</u> in interest) and $<u>3,779.98</u> in union dues (comprised of $<u>3,093.86</u> in delinquent contributions and $<u>686.12</u> in liquidated damages). These delinquent amounts shall be paid in their entirety at the time payment under this Note commences, in accordance with the schedule described in paragraph 5.

3. The Company will also pay the Funds the sum of $<u>1,974.81</u> in audit costs. This amount split equally between Welfare and Pension as described in paragraph 1 above.

4. Simultaneously with the execution of this Note, the Company will pay $<u>20,000.00</u> of the total outstanding indebtedness, excluding note interest and the delinquent amounts described above in paragraph 2, or $<u>6,134.26</u> to the Health and Welfare Fund, $<u>2,081.14</u> to the Retiree Health and Welfare Fund and $<u>5,964.78</u> to the Pension Fund.

5. For twelve (12) consecutive months commencing on <u>August 1, 2015</u> and ending on <u>July 1, 2016,</u> the Company will pay $<u>1,970.35</u> per month to the Health and Welfare Fund, $<u>660.08</u> to the Retiree Health and Welfare Fund and $<u>1,922.51</u> per month to the Pension Fund.

6. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

7. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.



8. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

9. This Installment Note is conditioned on the Company staying current on its obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the _23_ day of the _July_, 2015.

Garces Contractors LLC

By: _/s/ Manuel_
Title: _President_

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By:_____

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _____ by the undersigned, _____, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (collectively, the "Funds").

WHEREAS, Garces Contractors LLC (the "Company") has agreed to pay a total of $74,635.28 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twelve (12) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. <u>Continuing Guaranty.</u> This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by: (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. <u>Waivers.</u> Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note.


EXHIBIT C

The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Companys' Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The Guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. Default. The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

    (a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

    (b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

    (c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

    (d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

    15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

| In Case of Guarantor | In Case of the Funds: |
|---|---|
| _____ | Collection Counsel |
| _____ | John Hamada |
| _____ | Laborers Pension and Welfare Fund |
| _____ | Sub Office |
| | 111 W Jackson Blvd Ste 1415 |
| | Chicago IL 60604-3868 |

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _____. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

    16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

    17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

_/s/ Elda Mannion_____

Social Security Number
Date: 7/23/2015

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR:

_____

Dated: _____

4